**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JOHN ESTEVEZ,
                              *Plaintiff,*

       v.

KINGSTONE INSURANCE COMPANY
                              *Defendant,*

       and

TAMKO BUILDING PRODUCTS LLC, f/k/a
TAMKO BUILDING PRODUCTS, INC.
                              *Defendants*

Civil Action No. 22-05391

**OPINION**

May 9, 2025

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant TAMKO Building Products LLC's ("Defendant" or "TAMKO") Motion to Dismiss John Estevez's ("Plaintiff") Second Amended Complaint (ECF 91, "Complaint" or "Compl.") (ECF 98, "Motion" or "Mot."). For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from damage to the shingles on the roof of Plaintiff John Estevez's home. Plaintiff alleges that the damage was caused both by a hailstorm that occurred on July 8, 2021, and by defects in the shingles themselves.

In 2010, Anthony and Lisa Ceccon, owners of the plot of land located at 2 Bayberry Drive, Saddle River, New Jersey 07458, built a home on their property (the "Property"). (Mot. at Exs. H and J.) John and Francia Estevez purchased the Property from the Ceccons; title transferred to the Estevezes on July 26, 2011. (*Id.* at Ex. I.) Plaintiff obtained a homeowner's insurance policy from

1

Defendant Kingstone Insurance Company that covered losses and damage to the Property. (Compl. ¶ 10 and Ex. A.)

On July 8, 2021, nearly ten years after Plaintiff purchased the Property, a hailstorm swept through northern New Jersey, impacting several sites in the area, allegedly including Plaintiff's home. (*Id.* ¶ 11 and Ex. D.) Plaintiff notified Kingstone of the alleged damage and retained USA Roof Masters to inspect the Property, assess any damages or losses, and prepare a report documenting their findings. (*Id.* ¶¶ 12-13.) USA Roof Masters conducted their inspection over two site visits on August 26, 2021 and September 7, 2021, and Plaintiff avers that he shared their report with Kingstone along with a hail report showing hail damage in the vicinity of the Property. (*Id.* ¶¶ 13-14 and Exs. C and D.) The USA Roof Masters report concluded with a "confident" determination that the damage to the shingles was "a result of a sudden direct physical loss" probably caused by "severe wind causing tree branches and debris to impact the roof, or large hail." (*Id.* at Ex. C.) The USA Roof Masters report also identified the damaged shingles as TAMKO Lamarite synthetic slate manufactured by Defendant, a roofing product which has been discontinued. (*Id.*) Plaintiff estimates the cost to repair his roof to be $408,736.53.[1] (*Id.* ¶ 25 and Ex. F).

On December 7, 2021, Kingstone denied Plaintiff's insurance claim, stating in relevant part that Kingstone's "inspection revealed there is no storm related damage to [Plaintiff's] roof." (*Id.* ¶ 15 and Ex. E.) Neither Kingstone nor Plaintiff specified when or by whom this inspection was conducted.

---

[1] Kingstone retained J.S. Held, LLC to perform an inspection of the loss and issue a report dated June 29, 2024, which produced this figure. *See* Compl. Ex. F.

On July 29, 2022, Plaintiff filed a complaint (the "State Complaint") against Kingstone in the Superior Court of New Jersey, Law Division, Bergen County, alleging that Kingstone had breached the insurance agreement and acted in bad faith by failing to cover Plaintiff's claimed July 8, 2021 loss.  (ECF 1.)  On September 2, 2022, Kingstone removed the case to this Court, invoking diversity of citizenship jurisdiction under 28 U.S.C. § 1332 (Plaintiff is a natural person residing in New Jersey; Kingstone is an insurance company organized under New York law with a principal place of business in New York)[2].  (*Id*. at 1.)  Plaintiff then amended his State Complaint, asserting the same breach of contract and bad faith claims against Kingstone.  (ECF 4 ("Amended Complaint").)  Kingstone moved to dismiss the bad faith count of the Amended Complaint (ECF 5), but the motion was denied (ECF 8 and 9).

On August 2, 2023, Kingstone filed a third-party complaint against TAMKO pursuant to Federal Rule of Civil Procedure 14, alleging that TAMKO was solely liable for the damage to Plaintiff's roof because TAMKO manufactured the allegedly defective synthetic shingles.  (ECF 25 (the "Third-Party Complaint").)  The Third-Party Complaint featured six causes of action: (1) strict products liability, (2) breach of express warranties, (3) breach of the implied warranty of fitness for an ordinary purpose, (4) breach of the implied warranties of merchantability and fitness for a specific purpose, (5) negligent design and manufacture, and (6) contribution and indemnity. (*See Id*.)  On March 11, 2024, TAMKO answered the Third-Party Complaint and moved for judgment on the pleadings.  (ECF 63 and 64.)  Magistrate Judge Jose R. Almonte issued a Report and Recommendation that TAMKO's motion for judgment on the pleadings be granted, and this

---

[2] The Court retains diversity jurisdiction in this matter as TAMKO is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Kansas, and the amount in controversy exceeds $75,000.  (Compl. ¶¶ 3, 7.)

Court adopted that Report and Recommendation and dismissed TAMKO from the case on August 23, 2024. (ECF 83 and 85.)

Shortly thereafter, Plaintiff and Kingstone stipulated to allow Plaintiff to file a Second Amended Complaint (the operative Complaint), adding TAMKO as a defendant. (ECF 88 and 90.) Plaintiff filed the Complaint on September 9, 2024, asserting its original breach of contract and bad faith claims against Kingstone, as well as five claims against TAMKO that essentially mirrored the first five claims in the Third-Party Complaint: strict products liability, breach of express warranties, breach of the implied warranty of fitness for an ordinary purpose, breach of the implied warranties of merchantability and fitness for a specific purpose, and negligent design and manufacture. (*See* Compl.) Kingstone answered the Complaint, asserting affirmative defenses, a cross-claim against TAMKO, and a counterclaim against Plaintiff, but the cross-claim against TAMKO was dismissed by the parties' stipulation. (ECF 95, 96, 97.)

On November 15, 2024, TAMKO moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's claims are barred by the economic loss doctrine, barred by the applicable statutes of limitations, and barred by the terms of the warranty TAMKO issued to the Ceccons when they initially purchased the shingles. (*See generally,* Mot.) Alternatively, TAMKO argues that John Estevez's wife, Francia Estevez, must be included as a plaintiff in this case because she holds title to the Property jointly with her husband, pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. TAMKO also argues that it was misjoined to this suit, and that Plaintiff's suit against TAMKO must be severed from his suit against Kingstone, pursuant to Federal Rule of Civil Procedure 21. (*Id*.) Plaintiff submitted an Opposition to the Motion (ECF 108 ("Opposition" or "Opp.")) on January 7, 2025, and TAMKO submitted a Reply in support of the Motion (ECF 110 ("Reply")) on January 14, 2025.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted."  For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.  On a Rule 12(b)(6) motion to dismiss, a district court may not consider information extraneous to the relevant pleading. *See* Fed. R. Civ. P. 12(b).  However, in certain circumstances, a court may also consider undisputed and authentic exhibits as well as matters of public record.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

To prevail on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), the movant must show that the plaintiff has failed to join a party under Federal Rule of Civil Procedure 19.  Rule 19 states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If either clause (A) or (B) of Rule 19 is satisfied, "the absent party is a necessary party that should be joined if possible." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). We must first determine whether the absent party is necessary to the action, then determine whether that party's joinder is feasible. *Id*. If a party's joinder is necessary, but not feasible, such that the party is indispensable to the case pursuant to Rule 19(b), then the action cannot go forward. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir.1993).

For the purposes of the 12(b)(6) and 12(b)(7) analyses, the Court "must accept all factual allegations in [the Complaint] as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.,* 113 F.3d 405, 417 (3d Cir.1997) and *Papasan v. Allain,* 478 U.S. 265, 286 (1986)) (internal citations and quotations omitted).

Federal Rule of Civil Procedure 21 states that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "Courts considering Rule 21 severance assess (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted." *Fernandez v. Borough of Roseland*, No. 22-00103, 2021 WL 3930718, at *10 (D.N.J. Sept. 2, 2021) (internal quotations omitted).

III.    DISCUSSION

    a.  12(b)(6) Claims

6

### i. Breach of Implied Warranty Claims (Counts V and VI)

In Count V of the Complaint, Plaintiff asserts that by selling allegedly defective shingles, TAMKO breached the implied warranty of fitness for an ordinary purpose. (Compl. ¶¶ 53-57.) In Count VI, Plaintiff similarly alleges that TAMKO breached the implied covenants of merchantability and fitness for a specific purpose. (Compl. ¶¶ 59-64.)

In its Motion, TAMKO argues that these breach of implied warranty claims are barred by the applicable statutes of limitations. (Mot. ¶¶ 22-27 and pages 6-8.) TAMKO invokes New Jersey contract law and the UCC for the proposition that "an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.J. Stat. Ann. § 12A:2-725(1); U.C.C. § 2-725. TAMKO also notes that "a cause of action for breach of implied warranty accrues when delivery of the product is made, regardless of the purchaser's lack of knowledge." *Moulton v. LG Elecs. USA, Inc.*, No. 11-4073, 2012 WL 3598760, at *3 (D.N.J. Aug. 21, 2012); *see also* N.J. Stat. Ann. § 12A:2-725(2). Since the shingles were installed (*i.e.*, delivered) in 2010, TAMKO argues that Plaintiff's implied warranty claims expired sometime in 2014. (Mot. at 6-8.)

In his Opposition, Plaintiff contends that the statute of limitations has not expired because the same provisions of New Jersey law and the UCC that TAMKO cites also provide that "[a] breach of warranty occurs when tender of delivery is made, *except that where a warranty explicitly extends to future performance* of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." N.J. Stat. Ann. § 12A:2-725(2) (emphasis added). Plaintiff takes the position that TAMKO "explicitly extended its warranty to future performance of the roofing tiles for fifty (50) years," and that the cause of action began to accrue upon the discovery of the breach (*i.e.*, the failure of

the shingles) on July 8, 2021.  (Opp. ¶ 27.)  In Plaintiff's view, the statute of limitations expires

on July 8, 2025.  (*Id.*)  Notably, Plaintiff cites no other case law to support this view.

On Reply, TAMKO argues that Plaintiff's argument about the extension of the implied

warranties into the future is inapposite because "[i]mplied warranties, by their very nature, cannot

extend to future performance because such an extension must be *explicit* and an implied warranty

cannot explicitly state anything."  *Travelers Indem. Co. v. Dammann & Co., Inc.*, 592 F. Supp. 2d

752, 765 (D.N.J. 2011) (emphasis in original).

The Court is persuaded by TAMKO's argument.  It is well established under both New

Jersey law and the law of this Circuit that the tolling provisions in N.J. Stat. Ann. 12A:2-725(2)

and U.C.C. § 2-725 do not apply to implied warranties.  *See Stratis v. BMW of N. Am., LLC*, No.

22-06929, 2023 WL 3092188, at *9 (D.N.J. Apr. 26, 2023); *Martinez v. Ethicon*, Inc., No. 18-

17570, 2019 WL 4345867, at *3 (D.N.J. Sept. 12, 2019); *Argabright v. Rheem Mfg. Co.*, 201 F.

Supp. 3d 578, 600 (D.N.J. 2016).  Any causes of action for breach of implied warranties began to

accrue upon delivery of the shingles in 2010, and those causes accordingly expired in 2014.

TAMKO's Motion to Dismiss Counts V and VI is hereby **GRANTED**, and those claims

are dismissed with prejudice.

### ii.  Strict Products Liability and Negligent Design & Manufacture (Counts (III and VII)

Plaintiff asserts two tort claims against TAMKO: Count III is a strict products liability

claim predicated on TAMKO's manufacture and sale of the allegedly defective shingles; Count

VII is a negligent design and manufacture claim predicated on TAMKO's alleged breach of its

duty to produce shingles free of defects.  (Compl. ¶¶ 41-48, 65-70.)  Plaintiff argues that "[a]s a

result of TAMKO's design and manufacturing of the synthetic slates on Plaintiff's roof, the

Property was more susceptible to weather events like that of 7/8/2021 [*sic*], and Plaintiff ultimately sustained greater and/or additional damages to his roof." (*Id.* ¶ 26.)

In its Motion, TAMKO cites *Dean v. Barrett Homes, Inc.*, 8 A.3d 766 (N.J. Sup. Ct. 2010) to argue that these claims are subject to the New Jersey Products Liability Act and barred by the economic loss rule, which prevents parties from recovering costs for damage that an allegedly defective product does to itself. (Mot. ¶¶ 15-21 and 3-6.) TAMKO asserts that Plaintiff alleges damage only to the shingles themselves, and not to the Property. (*Id.*)

In Opposition, Plaintiff argues that he is "not alleging damage solely to the shingles manufactured by TAMKO, but rather the cost to replace the entire roof" because, "[a]s the shingles are a non-integral part of the Property, the additional damages to the Property resulting from the loss to the shingles are not barred by the economic loss doctrine." (Opp. ¶ 21.) Plaintiff also relies on *Dean* for the proposition that "building products which are 'affixed to the exterior' of a property are not integral parts of the structure," such that "the house itself does not become the product for the purposes of the economic loss rule. (*Id.* ¶ 17; *see also Dean*, 8 A.3d at 776-777.)

On Reply, TAMKO argues that "Plaintiff is categorically wrong that the subject TAMKO shingles have not been fully integrated into the subject house, or at a minimum the roof of the house." (Reply at 2.) TAMKO creatively endeavors to distinguish the integrated products doctrine holding in *Dean* from this case by urging the court to embrace the counterpoint of the holding in *Jimenez v. Superior Court*, 58, P.3d 450, 459 (Cal. Sup. Ct. 2002), which the *Dean* court relied upon, and which found that windows were not integrated into a home because "a window that has been removed from one house can then be installed in another house." (Reply at 3-4.) TAMKO asks this Court to apply this "test" and find that the shingles are fully integrated into Plaintiff's house because they are installed with nails and cannot be removed and repurposed without

damaging them. (*Id.*) TAMKO alternatively argues that, even if this Court finds that the shingles are not fully integrated into the Property, "Plaintiff's Second Amended Complaint has not alleged damage to 'the house's structure or environs' or 'other property' *caused* by the allegedly defective TAMKO shingles." (*Id*. at 4-9.)

Here again TAMKO's argument carries the day. TAMKO is correct to point out that "[w]hether couched in terms of negligence, strict liability, or breach of an implied warranty, a product liability cause of action is subject to New Jersey's Product Liability Act, N.J.S.A. 2A:58C-1 to -11." *Ford Motor Credit Co., LLC v. Mendola*, 48 A.3d 366, 374 (N.J. Super. Ct. App. Div. 2012). In New Jersey and in this District, the New Jersey Products Liability Act's definition of "harm" sufficient to give rise to a cause of action "does not apply when a party is seeking 'purely' or 'only' economic damages." *Flint Grp. N. Am. Corp. v. Fox Indus. Inc.*, No. CV 16-03009, 2017 WL 1838763, at *8 (D.N.J. May 5, 2017). "Simply put, the Act is not concerned with providing a consumer with a remedy for a defective product per se; it is concerned with providing a remedy for the harm or the damage that a defective product causes to people or to property." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 608 (D.N.J. 2013) (citing *Dean*, 8 A.3d 777 (2010)). In other words, for Plaintiff's claim to survive TAMKO's Motion, he must allege facts sufficient to show that TAMKO's shingles plausibly damaged the Property in some way.

To test Plaintiff's claim against the Motion, the Court must determine whether the shingles are integrated into the underlying structure of the Property. Here, Plaintiff makes the stronger argument that the shingles are a non-integral part of the Property. This case is analogous to *Dean*, in which the New Jersey Supreme Court held that an allegedly faulty Exterior Insulation and Finish System (EIFS) affixed to the exterior walls of a house as a moisture barrier was not fully integrated into the structure of the house. *Dean*, 8 A.3d at 776-777 (2010). The shingles on the roof of

Plaintiff's home are affixed to the structure, and they serve an important purpose (*i.e.*, protecting the underlying roof from weathering and impact damage), but they are not integrated such that damage to the shingles per se amounts to damage to the Property.  The Court will not embrace the "test" that TAMKO perceives between the lines of the *Jimenez* case.

Notwithstanding Plaintiff's correct argument that the shingles are not integrated into the Property's structure, he remains unable to escape the economic loss rule.  Plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims," *Connelly*, 809 F.3d at 789.  He has not done so.  In the Complaint, Plaintiff alleges that "Plaintiff suffered direct physical loss to the insured premises, resulting in damage to the Property and those areas and to the extent set forth in the preliminary estimate of loss" and that "[a]s a result of TAMKO's design and manufacturing of the synthetic slates on Plaintiff's roof, the Property was more susceptible to weather events like that of 7/8/2021, and Plaintiff ultimately sustained greater and/or additional damages to his roof."  (Compl. ¶ 11 and 26.)  Rather than a concrete allegation of actual damage, this statement is a suggestion of an increased propensity for exposure to potential damage, which is not sufficient to state a claim upon which relief can be granted.  In the specific counts for strict products liability and negligence, Plaintiff alleges that the defective shingles led to "premature cracking, crumbling, curling, and delamination" and that "[t]o the extent that Plaintiff suffered the injuries and damages as alleged, said injuries and damages were exacerbated and/or, caused in part because of TAMKO's negligent design and/or manufacture of said slates/shingles."  (*Id*. ¶¶ 48 and 68.)  In support of his Complaint, Plaintiff submitted several exhibits, such as the USA Roof Master's inspection reports at Exhibits B and C, as well as J.S. Held's inspection report at Exhibit F.  As TAMKO aptly points out, none of these materials contain

facts that plausibly allege that the allegedly defective shingles damaged anything but themselves because of their defects.

For these reasons, the Court finds that Plaintiff has failed to state a claim in Counts III and VII. TAMKO's Motion as to Counts III and VII is hereby **GRANTED**, and those claims are dismissed with prejudice.

### iii. Breach of Express Warranties (Count IV)

In Count IV, Plaintiff alleges that TAMKO breached an express warranty (the "Warranty") providing that the shingles would be free of defects. (*Id*. ¶¶ 49-52.) Plaintiff states that the J.S. Held, LLC report commissioned by Kingstone found that "the TAMKO – Lamarite synthetic slate roof covering expected service life is fifty (50) years, which exceeds the track record of Plaintiff's roof," which was approximately 15 years old at the time of the alleged loss. (*Id*. ¶¶ 22-23 and Ex. F (internal quotations omitted).)

In its Motion, TAMKO argues that Plaintiff's claim must fail because "[P]laintiff is not the original 'owner' of the tiles/shingles and the express warranty was not transferred to the [P]laintiff as required by the express warranty." (Mot. ¶ 28.) TAMKO points out that, under the Warranty, "the term 'owner' is defined as 'the owner of the building at the time the Shingles are installed on that building." (*Id*. ¶ 30 and Ex. K.) The Warranty's transferability clause provides that:

> The Owner may transfer this Limited Warranty one (1) time during the first two (2) years of the Term to a purchaser of the building upon which the Shingles are installed (a "Purchaser"). The transfer must occur simultaneously with the sale of the building. To transfer this Limited Warranty, the Owner must provide TAMKO with written notice with thirty (30) days after the transfer. The written notice must include the names of the Owner and the Purchaser, the address of the building upon which the Shingles are installed, the date the Shingles were installed, and the date of the transfer."

(*Id*. ¶ 40 and Ex. K.)   TAMKO then cites records from the Saddle River, New Jersey Tax Assessor's Office (*id*. Ex. J) and the County of Bergen (*id*. Exs. H and I) to show that "the home at 2 Bayberry Drive, Saddle River, New Jersey was built in 2010 while the property was owned by Anthony Ceccon and Lisa Ceccon" and that, "[a]s such, John Estevez cannot base his express warranty claim on TAMKO's Limited Warranty as he is not the 'Owner' under the terms of the warranty." (*Id*. ¶¶ 31-35.)   TAMKO further argues that "Plaintiff's Second Amended [Complaint] does not satisfy the pleading requirements of Rule 9(c), which requires pleading that conditions precedent have been met," with the condition precedent here being the transfer of the Warranty. (*Id*. at 11.)

In Opposition, Plaintiff argues that his pleading is sufficient, as the Warranty was transferred to him upon the sale of the home.  (Opp. ¶ 42.)   He argues the transfer was proper because the records TAMKO cites in its Motion show that "Anthony and Lisa Ceccon did not reside at the property" and that "the Ceccon family admitted the Property was not used as their principal residence" such that "Plaintiff was the first person to occupy the residence."  (*Id*. ¶¶ 28, 34 and Mot. Exs. K and I.)  Plaintiff also points out that, notwithstanding the transferability clause "the Limited Warranty establishes that 'if you purchase a new residence and are the first person to occupy the residence, TAMKO will consider you to be the Owner even though the shingles were already installed."  (*Id*. ¶ 39 and Mot. Ex. K.)

In its Reply, TAMKO reiterates that Plaintiff "failed to plead the condition precedent of having TAMKO's Limited Warranty transferred to him by the 'Owners' of the limited warranty" because Plaintiff has not amended his complaint to allege that he is either the 'Owner' or that the limited warranty was transferred to him by the 'Owners.'  (Reply at 10-11.)

The Court is not persuaded by TAMKO's argument that Plaintiff's pleading fails to meet the standard under Rule 9(c). "A condition precedent is a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available." *Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *4 (D.N.J. June 1, 2020) (citation omitted). Federal Rule of Civil Procedure 9(c) states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." The rule "only 'obliges the pleader to allege compliance with the contract or the performance of any relevant conditions or to state that the performance or occurrence of the conditions precedent was waived or excused,'" and is "designed, not to add to pleading burdens, but 'to eliminate the detailed and largely unnecessary averments that resulted under the common law procedure.'" *Traisman*, 2020 WL 2847751, at *4 (citation omitted).

Plaintiff alleges that he is "an adult individual residing at" 2 Bayberry Drive. (Compl. ¶ 1.) He also alleges that the property belongs to him (*i.e.* that he owns it); this is corroborated by the Bergen County deed attached to Defendant's Motion as Exhibit I. (*Id*. ¶ 10.) He alleges that the shingles were damaged, and that the damage occurred well before the 50-year expected service life of the shingles expired. (*Id*. ¶¶ 11-23.) He also alleges that Plaintiff provided an express warranty that the shingles were not defective, and that TAMKO breached this warranty by selling defective shingles. (*Id*. ¶¶ 49-52.)

Under the terms of the Warranty, "'Owner' means the owner of the building at the time the Shingles are installed on that building. If you purchase a new residence and are the first person occupy the residence, TAMKO will consider you to be the Owner even though the Shingles were

14

already installed." (Mot. Ex. I.)  While TAMKO states in its Reply that "Plaintiff already testified under oath that Anthony Ceccon was living at the subject property prior to selling Plaintiff the Property," it offers no document or reference to substantiate this statement.  Nothing in the record or the pleadings of any party has indicated that Anthony or Lisa Ceccon ever occupied the Property as residents.  The facts may show otherwise after discovery, but for the purposes of the pleading stage, Plaintiff has met the pleading standard for conditions precedent under Rule 9 to plausibly allege that he is the 'Owner' of the Warranty.

TAMKO also invokes the transferability clause of the Warranty to argue that Plaintiff has also failed to provide TAMKO with the required 30-day written notice of transfer, such that the transfer of the Warranty from the Ceccon's to Plaintiff was never completed.  TAMKO's argument is defeated by the terms of the Warranty itself.  The transferability clause provides that "[t]he Owner may transfer this Limited Warranty one (1) time during the first two (2) years of the Term." (*Id.*)  This provision does not apply here, because, as discussed above, Plaintiff has sufficiently alleged that he is the Owner.  In effect, all the transferability clause says is that Plaintiff, as owner, could have transferred the Warranty to a third party during the first two years of the term.

For these reasons, the Court finds that Plaintiff has plausibly alleged a claim for breach of an express warranty.  TAMKO's Motion to Dismiss Count IV is hereby **DENIED**.

### b.  Failure to Join a Necessary Party Pursuant to Rule 19

Because TAMKO's Motion is denied as to Count IV, the Court must now determine whether Plaintiff is required to add Francia Estevez to the case as a necessary party.

TAMKO argues in its Motion that Francia Estevez must be added to the case as a co-plaintiff because "the Court cannot afford complete relief amongst the existing parties and

TAMKO is subject to incurring double, multiple, or otherwise inconsistent obligations." (Mot. ¶ 49.) TAMKO's position is that "Plaintiff John Estevez cannot 'alienate or otherwise affect' the interest in the property at 2 Bayberry Drive without Franica Estevez. (*Id*. at 14.) TAMKO argues that "[s]hould a defendant in this matter settle with John Estevez alone or obtain an order from the Court (dismissing the case or with a jury verdict), nothing would stop Francia Estevez from filing a complaint as John Estevez could not 'alienate or otherwise affect' the property alone. (*Id*.)

Plaintiff responds that the court can administer complete relief among the parties without Francia Estevez, and that Mrs. Estevez is not claiming any interests in the action. (Reply ¶ 47.)

Federal Rule of Civil Procedure 19(a)(1)(A) provides that "[a] party who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties." "The first joinder standard, which is prescribed in Rule 19(a)(1)(A), is designed to protect those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." *Wright & Miller* § 1604 Persons to Be Joined if Feasible—In General, 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.).

TAMKO is correct that Francia Estevez has an ownership interest in the Property, and thus an interest in this litigation. TAMKO is also correct that Francia Estevez could file a new lawsuit at any time if she is not a party to this suit. Plaintiff offers no substantive argument against Mrs. Estevez's joinder beyond bald assertions that the court can accord complete justice in her absence. (Reply ¶ 47.) Because joinder of Francia Estevez will not prejudice any party, and because her joinder will encourage and ensure the final resolution of this matter in the instant action with no further or follow-on litigation, the Court hereby **ORDERS** Plaintiff to amend his Complaint to

16

include Francia Estevez as a plaintiff. Plaintiff will submit a new complaint, with claims tailored to the holdings in this Opinion, and with Francia Estevez as a party, within 14 days.

### c.  Misjoinder Pursuant to Rule 21

TAMKO asks the Court to sever the claims against it from those against Kingstone, as it believes that the claims are unrelated and do not arise from the same transaction, occurrence, or series of occurrences such that it would be improper to keep them in the same lawsuit. (Mot. at 14-18; Reply at 11-12.)   Plaintiff argues that TAMKO was not misjoined to this suit, as the common basis of his claims against Kingstone and TAMKO is the alleged damage to his roof following the hailstorm on July 8, 2021. (Opp. ¶¶ 51-60.)

"With regard to severance decisions, the court is not required to consider anything in particular in reaching its conclusion. Nonetheless, courts generally consider the following factors when assessing whether to sever a party: (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if severance is granted, and (4) whether the party requesting severance will be prejudiced if severance is not granted." *Kasey v. Johnson & Johnson*, No. 21-15199, 2022 WL 17730930, at *4 (D.N.J. Aug. 12, 2022) (citing *Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999) and *Ames v. USAA Life Ins. Co.*, No. 18-09865, 2018 WL 5634684, at *1 (D.N.J. Oct. 31, 2018)) (internal quotations omitted).

The claims against Kingstone for breach of the insurance agreement and bad faith are significantly different from the (remaining) claim against TAMKO for breach of its express warranty, but they do arise from the same occurrence or series of occurrences insofar as they are

17

both connected to the July 8, 2021 hailstorm.  The agreements and transactions underlying the two claims are different, and they would require the trial of different facts and witnesses to test the merits of the claims.  Plaintiff, as the party opposing severance, would be prejudiced by having to start from square one as to its claims against TAMKO and proceed in a new suit.  Defendant would be slightly prejudiced by having to adhere to a joint discovery schedule along with Kingstone.

Balancing these considerations, the Court finds that severance in this case in not warranted.  TAMKO's Motion to Sever the claims against them from this suit is hereby **DENIED**.

IV.    **CONCLUSION**

For the reasons discussed above, TAMKO's Motion to Dismiss or, in the Alternative, Sever this case is **GRANTED** in part and **DENIED** in part.  Plaintiff is ordered to amend his complaint to add Francia Estevez as a co-plaintiff, and the parties are directed to begin discovery under the supervision of Magistrate Judge Almonte.  An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties